*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WESLEY JOSEPH MINK,

　　　　　Plaintiff-Appellee,

v

ASHLEY ELIZABETH MINK, also known as
ASHLEY HALES,

　　　　　Defendant-Appellant.

UNPUBLISHED
August 15, 2019

No. 347536
Kent Circuit Court
LC No. 15-004733-DM

Before: GADOLA, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendant appeals by right the trial court's order awarding primary physical custody of the parties' minor child to plaintiff. Defendant contends that the trial court erred when it concluded that proper cause or a change of circumstances existed warranting reexamination of the joint physical custody arrangement. Defendant also argues that even assuming proper cause or a change of circumstances, the trial court's decision granting plaintiff sole physical custody was against the great weight of the evidence. We disagree and affirm.

For the three years preceding the filing of plaintiff's motion to change custody, plaintiff and defendant shared joint legal and physical custody of the minor child who, the parties agree, suffers from anxiety-driven enuresis and constipation. In the motion, plaintiff contended that defendant was neglecting the child's care, treating her younger children by her new husband more favorably, and refusing to support the child's emotional needs, including a failure to comply with the recommendations of the child's psychologist as to alleviating the child's anxiety. Plaintiff supported his motion with an affidavit and various exhibits, including therapy progress notes, the child's reading and homework logs, and the child's bathroom monitoring chart. After reviewing the allegations, affidavit, and supporting evidence, the trial court granted plaintiff temporary physical custody in anticipation of an evidentiary hearing. Subsequently, after an evidentiary hearing spanning multiple days, the trial court, in a written opinion, ruled that plaintiff had established by clear and convincing evidence that modifying physical custody of the child in favor of plaintiff was in the child's best interests. Defendant now appeals.

-1-

In *Sinicropi v Mazurek*, 273 Mich App 149, 155; 729 NW2d 256 (2006), this Court, relying primarily on MCL 722.28, addressed the standards of review applicable in child custody disputes, observing:

> There are three different standards of review applicable to child custody cases. The trial court's factual findings on matters such as the established custodial environment and the best-interests factors are reviewed under the great weight of the evidence standard and will be affirmed unless the evidence clearly preponderates in the opposite direction.[1] In reviewing the findings, this Court defers to the trial court's determination of credibility. A trial court's discretionary rulings, such as the court's determination on the issue of custody, are reviewed for an abuse of discretion. Further, . . . questions of law in custody cases are reviewed for clear legal error. [Citations and quotation marks omitted.]

Adhering to these review standards is especially critical in this case considering that the trial court was presented with conflicting evidence and differing views in regard to the minor child's behavior and what was in her best interests. The trial court's associated credibility assessments must be respected, and the factual findings cannot be disturbed unless the evidence clearly preponderated in the opposite direction. Giving the trial court the required deference in this case, we conclude that reversal is unwarranted.

MCL 722.27(1)(c) provides that in a custody dispute, a trial court, for the best interests of the child at the center of the dispute, may "modify or amend its previous judgments or orders for proper cause shown or because of change of circumstances." The court, however, is not permitted to "modify or amend its previous judgments or orders or issue a new order so as to change the established custodial environment of a child unless there is presented clear and convincing evidence that it is in the best interest of the child." MCL 722.27(1)(c). "These initial steps to changing custody—finding a change of circumstance or proper cause and not changing an established custodial environment without clear and convincing evidence—are intended to erect a barrier against removal of a child from an established custodial environment and to minimize unwarranted and disruptive changes of custody orders." *Vodvarka v Grasmeyer*, 259 Mich App 499, 509; 675 NW2d 847 (2003) (quotation marks omitted).

The first step in the analysis is to determine whether the moving party has established proper cause or a change of circumstances by a preponderance of the evidence. *Id.* at 508-509. In *McRoberts v Ferguson*, 322 Mich App 125, 131-132; 910 NW2d 721 (2017), this Court stated:

> Proper cause means one or more appropriate grounds that have or could have a significant effect on the child's life to the extent that a reevaluation of the child's custodial situation should be undertaken. In order to establish a change

---

[1] Similarly, "[t]his Court reviews a trial court's determination regarding whether a party has demonstrated proper cause or a change of circumstances under the great weight of the evidence standard." *Corporan v Henton*, 282 Mich App 599, 605; 766 NW2d 903 (2009).

of circumstances, a movant must prove that, since the entry of the last custody order, the conditions surrounding custody of the child, which have or could have a significant effect on the child's well-being, have materially changed. To constitute a change of circumstances under MCL 722.27(1)(c), the evidence must demonstrate something more than the normal life changes (both good and bad) that occur during the life of a child, and there must be at least some evidence that the material changes have had or will almost certainly have an effect on the child. [Citations, quotation marks, and alterations omitted.]

With respect to the issue of "proper cause," the criteria outlined in the statutory best-interest factors "should be relied on by a trial court in deciding if a particular fact raised by a party is a 'proper' or 'appropriate' ground to revisit custody orders." *Vodvarka*, 259 Mich App at 512. In regard to "change of circumstances," the relevance of facts presented should also "be[] gauged by the statutory best interest factors." *Id.* at 514.

In *Pierron v Pierron*, 486 Mich 81, 92-93; 782 NW2d 480 (2010), our Supreme Court discussed the next step of the analysis, explaining:

> If the proposed change would modify the established custodial environment of the child, then the burden is on the parent proposing the change to establish, by clear and convincing evidence, that the change is in the child's best interests. Under such circumstances, the trial court must consider all the best-interest factors because a case in which the proposed change would modify the custodial environment is essentially a change-of-custody case.

The statutory best-interest factors are set forth in MCL 722.23.

We first conclude that the trial court's finding that there existed proper cause or a change of circumstances warranting further review of the custodial arrangement was not against the great weight of the evidence.

In *Dailey v Kloenhamer*, 291 Mich App 660, 666; 811 NW2d 501 (2011), this Court found that a change of circumstances or proper cause existed where the record demonstrated escalating arguments between the parties concerning "topics that could have a significant effect on the child's well-being," including issues related to the child's medical care and treatment. The panel concluded that the parties' recurrent disagreements and delays in treatment could have a detrimental effect on the child's well-being. See *id*.

In the instant case, the record was more than adequate for the trial court to determine that proper cause or a change of circumstances existed warranting reevaluation of custody and the statutory best-interest factors. As reflected in the minor child's therapy notes, the parties disagreed about the magnitude of the child's ongoing health issues and the course of treatment and care. The clinical psychologist who, by agreement of the parties, treated the child on a near-weekly basis believed that the child's anxiety was worsening and that she was showing early symptoms of depression. She also believed that the behavioral psychology methods employed by defendant and her husband were not only ineffective but possibly making the child's condition worse. She further opined that defendant was not following through with her

recommendations, including spending more one-on-one time with the child. This was exactly the type of escalating issue that warranted further review of the existing custody order because it touched on matters directly relevant to the continued emotional and physical well-being of the child. Although the trial court did not specifically cite *Dailey*, we believe that the court, based on this evidence, was satisfied that the child's manifested health problems, which stemmed from her anxiety, were inextricably linked to defendant's lack of guidance, care, and emotional ties. Although the trial court's reasoning was somewhat unclear, where the trial court reached the right result, we will still affirm. See *Scherer v Hellstrom*, 270 Mich App 458, 464; 716 NW2d 307 (2006).

We also hold that the trial court's findings regarding the best-interest factors were not against the great weight of the evidence and that the court's ultimate decision to award primary physical custody to plaintiff did not constitute an abuse of discretion. The trial court determined, and there is no dispute, that there existed a joint established custodial environment. Accordingly, plaintiff had the burden to prove by clear and convincing evidence that it was in the child's best interests to change custody as measured by application of the statutory best-interest factors in MCL 722.23. MCL 722.27(1)(c); *Pierron*, 486 Mich at 92-93. A trial court must examine all of the best-interest factors and state its findings and conclusions as to each factor. *Foskett v Foskett*, 247 Mich App 1, 9; 634 NW2d 363 (2001). The court does not have to make its custody determination on the basis of a mathematical calculation of the factors; rather, it can properly assign differing weights to the factors when making its decision. *Berger v Berger*, 277 Mich App 700, 712; 747 NW2d 336 (2008). And in *Heid v AAASulewski (After Remand)*, 209 Mich App 587, 594; 532 NW2d 205 (1995), this Court stated that "we are unwilling to conclude that mathematical equality on the statutory factors *necessarily* amounts to an evidentiary standoff that precludes a party from satisfying the clear and convincing standard of proof."

In rendering its custody ruling, the trial court considered all of the factors set forth in MCL 722.23 and explicitly stated its findings and conclusions as to each factor. The trial court found that Factors (a), (b), (d), and (*l*) favored plaintiff and that Factors (c), (e), (f), (g), (h), (j), and (k) were neutral, favoring neither party. The trial court met with the child and found that she was of sufficient age to express a preference, which she did. The court did not disclose the child's preference for purposes of Factor (i). Defendant challenges the trial court's findings on each of the factors that the court concluded weighed in favor of plaintiff. And she also claims error in regard to Factor (j), which defendant asserts should have been weighed in her favor instead of being found neutral.

MCL 722.23(a) considers the "love, affection, and other emotional ties existing between the parties involved and the child." Defendant contends that the trial court's ruling on Factor (a) "does not portray the full picture of what is going on." She argues that the child's perception of events was not always accurate and that the child's anxiety caused her to exaggerate. MCL 722.23(b) examines the "capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any." Defendant maintains that she was making strides to attend more therapy sessions and to more closely follow the therapist's recommendations, and she had also recently quit her job, allowing her additional time to participate. Therefore, the trial court erred in its assessment of Factor (b). MCL 722.23(d) contemplates "[t]he length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity."

-4-

Defendant asserts that the child has "irrational thoughts" stemming from her anxiety disorder and that there was "no evidence" that defendant or her husband did "anything inappropriate" or that their home was not a safe and stable environment. Therefore, according to defendant, the trial court erred in finding that Factor (d) favored plaintiff. MCL 722.23(j) considers the "willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents." Defendant contends that plaintiff "frequently fails to facilitate a relationship" between defendant and the child and did not communicate well, worsening the situation. And thus the trial court erred in finding this factor neutral. Finally, MCL 722.23(*l*) examines "[a]ny other factor considered by the court to be relevant to a particular child custody dispute." Defendant maintains that the trial court incorrectly determined that the child did not exaggerate or lie to the psychologist and plaintiff; therefore, the court erred in finding that Factor (*l*) favored plaintiff.

Defendant's primary contention is that the trial court, when assessing Factors (a), (d), and (*l*), gave undue weight to the minor child's "perception" of events as told to the child's psychologist during therapy. Defendant complains that the child's anxiety caused her to exaggerate and that she was unreliable. When confronted with these contentions at trial, the child's psychologist responded that she considered the child both honest and consistent in communicating her experiences at defendant's household over the course of a year of treatment. Furthermore, the trial court did not need to rely solely on the testimony of the psychologist because it personally interviewed the child and, therefore, had an independent basis for candidly evaluating the child's perception in light of all the evidence presented, as well as for considering the child's own preference. We conclude that defendant's arguments concerning the child's purportedly faulty "perception" provide no basis for appellate relief.

Moreover, with respect to Factors (a), (b), and (d), the trial court's determinations that defendant did not follow through with counseling recommendations and, overall, did not engender a positive environment for the child's emotional development also find sufficient support in the record. The psychologist described at length defendant's minimal involvement in the child's treatment and seeming inability or lack of desire to spend more time with her daughter despite the clear need. The record was also sufficient to support the trial court's conclusion that defendant's use of behavioral-based methods of parenting to treat the child's anxiety—against the recommendation of the psychologist—had the unintended consequence of actually causing the child further emotional harm. Although defendant's lack of emotional support may not have been the sole original cause of the child's underlying anxiety, the psychologist believed that the environment at defendant's house exacerbated the child's condition, negatively resulting in her enuresis, constipation, increased anxiety, hair loss, and early symptoms of depression. The psychologist also stressed that the particular method of parenting defendant and her husband employed, which included outright ignoring the child's complaints, was unsafe because the child might not, as a result of being ignored, communicate serious threats to her health and safety. We defer to the court's obvious assessment that the psychologist was a credible witness.

In her own testimony, defendant denied the severity of the problem, maintaining that the child did not act sad or anxious when at her house and claiming that her allegations during therapy were fabrications or the exaggerations of a sensitive child. Her husband testified similarly. This evidence, when viewed in the context of the psychologist's testimony, reasonably

supported the conclusion that although defendant wished the child no ill will, she was not adequately meeting her emotional needs and that the child's best interests would be better served by the stable and encouraging environment fostered by plaintiff. Notably, the Friend of the Court (FOC) also believed that defendant had not adequately participated in supporting the child's emotional needs and that the child did not feel that defendant provided her with the love, affection, and attention that she sought and needed. Likewise, the FOC also expressed a concern that defendant would not follow through with the psychologist's recommendations once court proceedings concluded. The FOC's stance was that the therapy reports validated plaintiff's concerns and raised a level of caution and concern about defendant's treatment of the minor child.[2] Although reasonable minds might disagree, we cannot conclude that the evidence clearly preponderated in favor of defendant, and we will not disturb the trial court's ruling. The trial court's findings with respect to Factors (a), (b), (d), and (*l*) were not against the great weight of the evidence.

Finally, the trial court found Factor (j) to be neutral, believing that both parents were capable of improving their co-parenting skills. The trial court's conclusion finds support in the record, including the FOC's position that the "main crux" of the custody disagreement resulted from both parties' failure to communicate well and co-parent effectively. In support of her contention that Factor (j) actually favored her, defendant cites her own testimony, in which she blamed plaintiff for not keeping her adequately informed of the child's progress in therapy as an excuse for why she did not regularly attend or keep herself apprised. Plaintiff testified that he always asked for updates directly from the psychologist and that he desired to continue to encourage "a healthy, loving, caring relationship" between the child and defendant, but one that also allowed the child the opportunity to trust defendant and feel safe in her home. Given these competing proofs, the trial court's conclusion that the factor was neutral was not against the great weight of the evidence. Ultimately, the trial court did not abuse its discretion in awarding plaintiff primary physical custody of the child.

We affirm. Having fully prevailed on appeal, plaintiff is awarded taxable costs under MCR 7.219.

/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Amy Ronayne Krause

---

[2] We reject defendant's argument that the FOC's recommendation against a custody change was controlling. On the contrary, the trial court was required to independently review the custody arrangement and make its own determination as to the child's best interests. Cf. *Harvey v Harvey*, 470 Mich 186, 193; 680 NW2d 835 (2004).